UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Local 1982, International Longshoremen's  Case No. 3:12-cv-01384
Association,
        Plaintiff

   v.  MEMORANDUM OPINION
 AND ORDER

Midwest Terminals of Toledo, International, Inc.,

        Defendant

This matter comes before me on cross-motions regarding an April 16, 2012 arbitration award. This Court has jurisdiction pursuant to 28 U.S.C. §1331. For the reasons that follow, I will grant Defendant's motion and deny Plaintiff's motion.

## BACKGROUND

The International Longshoreman's Association ("ILA") is a labor union representing maritime workers in North America, including those on the Great Lakes. The ILA Local 1982 ("the Union") is an ILA-affiliated local union based in Toledo, Ohio. The Union is also affiliated with the Great Lakes District Council, "(GLDC"), which is a subordinate body of the ILA and has jurisdiction over employers and local unions in the Great Lakes region.

Midwest Terminals of Toledo International, Inc. ("Midwest") is a full-service port located at the mouth of the Maumee River and employs persons engaged in stevedoring activities. Midwest is

also a member of the Great Lakes Stevedore Employers ("GLSE"), a multiemployer bargaining group.

Midwest, the ILA, and the Union are parties to two agreements at the heart of this dispute. The first is termed "Agreement between International Longshoremen's Association Local Union No. 1982 and Midwest Terminals of Toledo International," which hereinafter is referred to as the "Local CBA." The Local CBA was entered into in January 2006 and effective through December 31, 2010. The second is termed as "Master Agreement between Great Lakes Stevedore Employers and Great Lakes District Council-Atlantic Coast District International Longshoremen's Association AFL-CIO" and is designated as the "Master CBA." The Master CBA was effective from January 2011 through December 31, 2012.

In the fall of 2011, the Union and Midwest commenced negotiations regarding the Local CBA. Midwest was represented by Chris Blakely ("Blakely") and Terry Leach ("Leach"). The Union was represented by GLDC President, John Baker, Jr. ("Baker") and fellow vice president Andrew Joseph ("Joseph"). During these negotiations, Midwest claims the Union made repeated efforts to change language in the Local CBA fund provision. The Union contends Midwest had failed to "establish a proper jointly-trustees[sic], Taft Hartley trust fund as required by Section 5.5A of the Master Agreement." (Doc. No. 9-1, p.3).

In early December 2011, it became apparent the Union and Midwest were not in agreement on this issue. On December 9, 2011, Baker, on behalf of the Union, presented a class action grievance to Midwest.

In a written memorandum dated December 12, 2011, Midwest responded that the grievance was procedurally barred for failing to follow specific guidelines for disputes under Section 18.1 of the Local CBA. (Doc. No. 6-6). Midwest also found the grievance to be time barred as it was filed outside the 18 month time frame following the "event giving rise to the dispute." (*Id.* at p.1).

2

The Union then appealed the grievance under the Master CBA grievance and arbitration procedure. Midwest objected to the appeal under the Master CBA grievance procedure and did not appear at the March 16, 2012 hearing before the Joint Committee.

On April 16, 2012, an award based upon the class action grievance was rendered by the grievance committee in the Union's favor and against Midwest. On June 1, 2012, the Union filed a complaint to confirm the arbitration award. (Doc. No. 1). On July 13, 2012, Midwest moved to vacate the arbitration award. (Doc. No. 6). The Union filed a cross-motion for an order confirming and enforcing the arbitration award. (Doc. No. 9). As these issues have been briefed by both sides, the matter is decisional.

**STANDARD OF REVIEW**

The review of "arbitration awards [is] 'one of the narrowest standards of judicial review in all of American jurisprudence.'" *DBM Tech., Inc. v. Local 227, United Food & Commercial Workers Int'l Union*, 257 F.3d 651, 656 (6th Cir. 2001) (*quoting Lattimer-Stevens Co. United Steelworkers of Am., AFL-CIO, Dist. 27, Sub-Dist. 5*, 913 F.2d 1166, 1169 (6th Cir. 1990)).

The Sixth Circuit clarified the test regarding review of arbitration awards as follows:

> In *Michigan Family*, we held that judicial review is confined to deciding whether a "procedural aberration" was present in the arbitration process, and must not focus on matters of substantive interpretation and the outcome an arbitrator reached. 475 F.3d at 753. *Michigan Family* requires us to defer to the arbitrator's decision unless the arbitrator 1) acted outside his authority by resolving a dispute not committed to arbitration; 2) committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing the award; or 3) was not even "arguably construing or applying the contract" in resolving legal or factual disputes. *Id.*

*Brotherhood of Locomotive Engineers and Trainmen v. United Transportation Union*, 700 F.3d 891, 901 (6th Cir. 2012)(*citing Michigan Family Resources, Inc. v. Service Employees International Union Local 517M*, 475 F.3d 746 (6th Cir. ), *cert. denied* 551 U.S. 1132 (2007).

3

If none of these conditions is met, then the arbitrator's determination must be sustained even if it encompasses "'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute." *Michigan Family Resources*, 475 F.3d at 753.

**DISCUSSION**

Midwest contends the grievance committee exceeded its authority and engaged in misbehavior prejudicial to the employer. Additionally, Midwest states the award does not draw its essence from the terms of the CBA and should be vacated.

The Union seeks confirmation of the arbitration award on the basis that the grievance committee properly interpreted the master agreement, the award draws its essence from the agreement and Midwest has failed to prove exclusion of the issue from arbitrability. As both parties touch upon the arbitrability of the issue, this implicates the first prong under *Michigan Family Resources*, the initial issue to be addressed.

*A. Scope of Authority*

According to the Sixth Circuit "[a]n arbitrator. . . . exceeds his authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Id.* at 756[1].

When "construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Stolt-Nielsen S.A. v. AnminalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1773-74 (2010)(*citing Volt Information Sciences, Inc. v. Leland Stanford Junior Univ.*, 489 U.S. at 479 (1989)). Whether the employer or union is bound by a collective bargaining agreement to arbitrate the grievance is a matter of contract interpretation to be decided by the court. *South Central Power Co. v. Int'l Broth. Of Elec. Workers, Local Union* 2359, 186 F.3d 733, 738 (6th Cir. 1999) (*citing*

---

[1] *See also Int'l Ass'n of Machinists & Aerospace Workers AFL-CIO, Local Lodge 1943 v. AK Steel Corp.*, 615 F.3d 706, 709 n.1(6th Cir. 2010)("Substantive arbitrability is whether an issue is within the scope of an agreement's arbitration clause and must be submitted to arbitration.")(citation omitted), *cert denied*, 131 S.Ct. 945 (2011).

*AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)). Our circuit holds "'[i]nterpretation of a collective bargaining agreement begins with the explicit language of the agreement.'" *Franklin v. Kellogg Co.*, 619 F.3d 604, 616 (6th Cir. 2010)(*quoting Raceway Park, Inc. v. Local 47, Serv. Employees Int'l Union*, 167 F.3d 953, 963 (6th Cir. 1999)). Application of "traditional rules for contractual interpretation" are utilized to the extent they are "consistent with federal labor policies." *UAW v. Yard-Man, Inc.* 716 F.2d 1476, 1479 (6th Cir. 1983). Contract interpretation requires the contract language to be given effect unless it is ambiguous or capable of "two reasonable interpretations." *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir.), *cert. denied,* 513 U.S. 1058 (1994).

The Master CBA addresses grievance and arbitration procedures in the following manner:

> **25. A** Should any difference or dispute arise relating to the meaning and interpretation or application of any of the provisions of this Master Agreement (hereinafter referred to as "grievance") between the Employers party to this Agreement and an employee or group of employees of the GLDC-ACD/ILA, such grievance will be handled as hereinafter provided.
>
> 1. A difference or dispute relating to the meaning and interpretation of the provisions of a Local Agreement entered into with a Local Union affiliated with the GLDC-ACD/ILA (including matters which, under this Master Agreement, are to be established or dealt with in Local Agreement) shall not be deemed to be a "grievance" hereunder and shall not be subject to the settlement and arbitration procedures provided under this section 21, but shall be resolved under the grievance and arbitration procedures provided for under such Local Agreement.

(Doc. No. 6-3, p. 13).

There is no dispute between the parties that the grievance was subject to an arbitration procedure. The dispute is over which arbitration procedure applies: that of the Master or Local CBA?

The Union's grievance reads as follows:

5

DESCRIPTION OF THE GRIEVANCE: Violation of Master Agreement Section 5.5A Welfare contribution for each hr. of wages paid [sic] behalf of each actively employed person. . .

IDENTIFY CONTRACTUAL PROVISIONS VIOLATED AND/OR ESTABLISHED CUSTOM AND PRACTICE VIOLATED: Master Agreement & Local 1982 Agreement Section 18. Paragraph 18.1

REMEDY SOUGHT: Establish Health Welfare & Pension Fund including a payment plan on the unfunded liability and the plan to made whole

(Doc. No. 6-5).

The description of the grievance references a violation of the Master CBA, specifically, Section 5.5A[2]. The section of the grievance identifying the contractual provisions violated, however, references *both* the "Master Agreement & Local 1982 Agreement Section 18. Paragraph 18.1[3]."

---

[2] **5.    Contributions to Pension and Welfare Plans**

**5. A**    The minimum contribution to affiliated local union and employer ERISA approved benefit, pension and welfare plans for each hour of wages paid on behalf of each actively employed person, for the below listed years, for all ports except Toledo Gran, Duluth/Superior, and Milwaukee Grain, will be a total increase of $.75 and shall be allocated according to the table listed below

| | | | |
|---|---|---|---|
| 1/1/2011 - 12/31/2011 | an increase of $.35@hour | for a total of | $14.35@hour |
| 1/1/2012 - 12/31/2012 | an increase of $.40@hour | for a total of | $14.75@hour |

The above listed minimum contributions are to be allocated per affiliated local contractual agreements and affiliated local trust fund agreements. . . . . .

[3] 18. PENSION AND HEALTH AND WELFARE FUND

18.1 Contributions. The Company shall accrue an obligation to the MWTTI-ILA Health, Welfare & Pension Fund ("Fund") for each hour of work paid to members of the collective bargaining unit by the Company, whether paid at straight-time, overtime, penalty or premium rates and including standby time, guaranteed time and other nonproductive time actually paid ("contribution"). The contribution rate shall be determined by the Great Lakes District of the ILA and the Employers Group. All contributions called for herein shall be accrued by the Company on or before the tenth day of the month following the month in which the hours were worked. Company contributions not accrued on or before the due date shall bear interest at the rate of one and one-half percent (1-1/2%) per month until paid. A contribution report shall be furnished to the Union when contributions are accrued. The Fund is intended to constitute an unfunded obligation of the Company, but the Company shall maintain records of contributions, cost of benefits provided, and the current accrued balance.

Benefits. The benefits to be provided by Health, Welfare & Pension Fund shall be determined by the Union subject to the following:

a) The benefits to be provided shall be for the sole and exclusive benefit of the employees covered by this Agreement;

b) The number of bargaining unit employees to be provided coverage shall be determined pursuant to the method previously used by the former trustees of the Toledo World Terminal-ILA Heath, Welfare & Pension Trust unless mutually agreed otherwise.

c) The Company's liability for such benefits shall in no event exceed the required contributions.

6

This Court considers the following guidance of the Sixth Circuit:

> "[I]n cases involving broad arbitration clauses the Court has found the presumption of arbitrability 'particularly applicable' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'"

*Int'l Ass'n of Machinists*, 615 F.3d at 711.

In cases considering broad arbitration clauses, exclusionary language has been deemed as strong evidence of a purpose to exclude. *See Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 262 (6th Cir. 2010) (finding that grievance for pension and rights benefits was excluded because the pension plan document, which was incorporated by reference into the CBA, contained an alternative procedure for resolving pension disputes); *Int'l Assoc. of Machinists & Aerospace Workers, AFL-CIO v. AK Steel Corp.*, 615 F.3d 706, 712 (6th Cir. 2010) (employee grievances were not subject to arbitration as the transition agreement when read with the CBA expressly excluded those claims from arbitration); *Carlisle Power Transmission Products v. United Steel, Paper and Forestry, Rubber, Mgf., Energy, Allied Industrial and Service Workers Int'l Union, Local Union No. 662*, 2012 WL 1155296 *5 (W.D. Mo. 2012) (employee grievance regarding long term disability benefits not subject to arbitration due to exclusionary language in CBA Plan Description which provided for "alternative procedural framework" in resolving benefit disputes). *Compare Teamsters Local Union No. 89 v. Kroger Co.*, 617 F.3d 899, 905 (6th Cir. 2010) ( broad arbitration clause in master agreement contained no issues exempted from arbitration provision in the master agreement, local supplement or letter of understanding relating to grievances alleged, requiring the parties to arbitrate subject to master agreement arbitration procedures).

I find that a reading of the grievance in conjunction with the arbitration provision under the Master CBA places it outside of the Master CBA arbitration procedure because the grievance

---

Disputes.  Disputes concerning the Fund shall be submitted as a grievance at Step Three of the Grievance Procedure within eighteen (18) months after the event giving rise to the grievance.

involves contractual provisions violated under both the Master CBA and the Local CBA. A grievance is not subject to the arbitration process under the Master CBA where it involves "a difference or dispute relating to the meaning and interpretation of the provisions of a Local Agreement." It is this language which constitutes "an express provision excluding" this grievance from the Master CBA arbitration procedure and requires resolution under the Local CBA.

The Union argues the exclusion only applies to provisions of the Local CBA which require the arbitrator to determine "meaning" or "interpretation" thereof and, in this case, the committee did not engage in analysis of Local CBA provisions. The Union's position is unavailing given the language of Section 25.A, which also addresses "meaning and interpretation" "or any of the provisions" of the Master CBA, and requires submission to arbitration under the Master CBA process[4].

The determination of whether a contractual provision was violated contemplates consideration of the "meaning" of the provision so violated and the arbitrator's "interpretation" therein. *See generally* RESTATEMENT (SECOND) OF CONTRACTS § 200 (1981) ("Intepretation of a promise or agreement or a term thereof is the ascertainment of its meaning.") Additionally, the Union's argument of what the committee did not consider conflates the propriety of arbitrability, i.e., "procedural aberration" versus that of an "arguably construing" analysis. *Michigan Family Resources*, 475 F.3d at 753-54. Moreover, there is no ambiguity as to the meaning of Section 25.A of the Master CBA.

I find that according to the Master CBA, the grievance was subject to the Local CBA arbitration procedures and excluded from the procedures under the Master CBA. Therefore, the arbitration at issue constituted a procedural aberration as it was outside the scope of the arbitration

---

[4] Interestingly, even Keith Flagg, the employer representative to the Joint Grievance Committee, characterized this grievance as, "a conflict between the GLDC language and your Toledo Local Language regarding ERISA H & W Trust funds." (Doc. No. 6-9).

committee's authority and contrary to the Master CBA arbitration procedures agreed to by the parties.

Next, Midwest contends the arbitration committee exceeded its authority because the award failed to draw its essence from the parties' agreement. Specifically, the award states in pertinent part:

> [W]e believe your company, Midwest Terminals International and prior union officers of the ILA Local 1982, ACD, GLDC, AFL-CIO have had ample time to establish trust fund plans that meet minimum ERISA standards which satisfy the requirement of "local union and employer ERISA approved benefit, pension and welfare plans" as defined in the GLSE and GLDC Master Agreement (5.A).
>
> Therefore, our ruling is that a procedure be moved forward to correct Midwest Terminals International's apparent violation of 5.A of the GLSE/GLDC Master Agreement.

(Doc. No. 1-3).

Midwest asserts this award imposes additional restrictions provided for in the agreements. Having determined the dispute was outside the arbitration committee's authority, it is unnecessary to determine whether the award drew its essence from the agreement as consideration of the dispute renders the award impermissible.

Midwest also contends the grievance committee lacked authority as they were not properly selected under the parties' agreement. Specifically, Midwest takes issue with the presence of Keith Flagg, the employer representative, as he "was not selected pursuant to the Parties' Agreement." (Doc. No. 6, p.19). Midwest does not provide any guidance or authority which governs this selection process to support its assertion nor does the arbitration provision address a selection process. The cases cited by Midwest are inapposite[5] and lend no support to Midwest's position.

B. *Exhaustion of Arbitral Remedies*

---

[5] *Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F.3d 223, 226 (4th Cir. 1994) (according to interpretation of the arbitration clause, arbitrators were to be chosen by mutual agreement of the parties); *Avis Rent A Car System, Inc. v Garage Employees Union, Local 272*, 791 F.2d 22, 25 (2nd Cir. 1986) (arbitrator was not properly chosen pursuant to selection method contained under the respective agreement on which arbitrator's jurisdiction was based upon).

The Union argues Midwest failed to exhaust its administrative remedies entirely by failing to "dispute" the composition of the grievance committee, the meaning of Master CBA Section 5.A or the timeliness of the Union's grievance pursuant to the Master CBA arbitration procedures. I disagree.

As this Circuit has noted, "a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration." *Int'l Association of Machinists & Aerospace Workers*, 615 F.3d at 711 (citations omitted). While Midwest did not appear before the Joint Grievance Committee, there is no dispute that it objected to the arbitration beginning with a December 12, 2011 "Step Two response" to the grievance. (Doc. No. 6-6). On January 4, 2012, Midwest wrote to the Union trustees and addressed the arbitration procedures under the Master CBA advising that Midwest was waiting for the Union's response to the Step Two response under the Local CBA. (Doc. No. 6-10). A second letter on February 8, 2012, addressed Midwest's willingness to "discuss any open grievances not previously discussed at the Step Three level." (Doc. No. 6-13). This was followed by another letter, dated March 2, 2012, by Midwest to the Union again requesting their response to the local grievance.

The Union relies upon *Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 738 v. Dean Foods Co.*, __Fed. Appx.__, 968 F.2d 1213(6th Cir.1992)(unpublished), as support for its contention Midwest failed to exhaust its administrative remedies in not challenging the panel selection before the Joint Committee. The Union's reliance upon this case is not persuasive as the parties in *Dean Foods* agreed to submit the dispute over a local addendum to arbitration. Here, there was no such agreement. Instead, Midwest, through a series of correspondence directed to the grievants, stated it was addressing the grievance through the Local CBA arbitration procedures. As Midwest did not agree to arbitrate the grievance via the Master CBA procedures, it did not fail to exhaust their administrative remedies.

## CONCLUSION

Having determined the dispute was not subject to the Master CBA grievance procedures, the arbitrators acted outside their authority by issuing an award on a dispute not properly before them. For the reasons stated above, Defendant's motion to vacate the arbitration award (Doc. No. 6) is granted and Plaintiff's cross-motion to confirm the arbitration award (Doc. No. 9) is denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
